Robinson, J.
The finding of facts by the court of appeals is challenged here as being unsupported by any evidence, and we have therefore carefully considered the whole record.
The record discloses no competent evidence tending to support the following, of finding 3, “that by an agreement between P. J. Carroll and M. E. Carroll, he, M. E. Carroll, was to be permitted to have the dividends on said 30 shares during the term of his natural life, and said certificate was. to be issued in his name to qualify him as a member of the board of directors and for purposes of prestige, and if he was able to pay said P. J. Carroll therefor he was to have the title thereto, but in the meantime the title and ownership was to remain in P. J. Carroll; * * * that on the third day of May, 1913, said Maurice E. Carroll, made an absolute transfer and assignment of said certificates for thirty (30) shares of said capital *303 stock * * *. That he, the said M. E. Carroll, delivered said certificate so assigned to the said P. J. Carroll.”
The only evidence on the subject was by the witness C. Fred Vollmer, who is thoroughly discredited by his own conduct, inconsistent with his testimony. He expressed his mere opinion as to what occurred between Maurice E. Carroll and Patrick J. Carroll on this occasion, but upon being pressed by the court admitted that he was not present and that the only conversation he ever had with Maurice E. Carroll with reference to that transaction instead of being an admission supporting his conclusion was the direct opposite.
The record discloses no evidence tending to support the following, of finding 4, “but retained possession thereof and deposited the same with his personal effects in his safety deposit box at the First National Bank of Bucyrus, Ohio, where said certificate was held and retained by said P. J. Carroll, until his death,” except that the certificate, together with other personal effects of both Maurice E. Carroll and Patrick J. Carroll, was found after the death of Patrick J. Carroll in the safety deposit box of Patrick J. Carroll at said bank, to which Patrick J. Carroll carried the only key.
The record discloses no evidence tending to support the following, of finding 4, “that at said time said certificate for thirty (30) shares of the capital stock of the Ohio Locomotive Crane Company was found in said box by said parties, together, with other certificates of stock in various corpora *304 tions, and other valuable papers, with a rubber around the same and enclosed in one parcel and marked thereon ‘property of P. J. Carroll,’ ” the evidence being that it was found in said box in an envelope marked “Ohio Locomotive Crane,” and in the same envelope with the certificates for 40 shares of locomotive crane admittedly belonging to Patrick J. Carroll; and the.evidence is in conflict as to the certificates for the stock of each in The Carroll Foundry & Machine Company being found in the same envelope.
The following of finding 5, “that at the time of said inspection, said papers and said certificate of stock for 30 shares in the defendant company, were found in the same condition as hereinbefore stated,” is equally unsupported.
We are unable to understand the reasoning of the court in finding 12, “that said Stoltz, Picking and Gallinger at the time of the attempted purchase of said several certificates of stock, relied only on the order of sale made by the Probate Court of'Crawford county, Ohio, given to A. J. Richards, administrator aforesaid, to sell said stock, and the inventory and appraisement of said estates and their conduct and attempted purchases were not influenced in any manner or'degree by any of the acts or declarations of Patrick J. Carroll during his lifetime; and the court finds that all such acts and declarations of P. J. Carroll harmonize with the arrangement or understanding between P. J. and M. E. Carroll made and maintained the time they both were alive, as hereinbefore set forth,” in view of the conclusive and uncontra *305 dieted evidence that Patrick J. Carroll had notoriously held Maurice E. Carroll out to the world as the owner of this stock, all of which had come to the knowledge of the plaintiffs in error.
The record discloses finding IS, “That the plaintiff as administratrix of the estate of P. J. Carroll, began this action immediately and without delay after obtaining information that the certificate for the 30 shares of said capital stock was claimed by anyone to belong to M. E. Carroll or his estate,” to be unsupported by any evidence and in contradiction of the evidence.
We are of opinion that many of the errors of fact appearing in the finding are due to the failure of the court to apply and enforce the ordinary rules of admission and rejection of evidence, upon the theory that the cause being tried to a court learned in the law it would not be prejudiced by the introduction of incompetent evidence and in the consideration thereof would be influenced by and would base its judgment only upon the evidence which after careful deliberation it found to be competent.
The finding of facts in this case, based in many instances upon incompetent evidence, proves the fallacy of the theory. There is. no sound logic,' nor any law, which authorizes a chancery court learned in the law to disregard the very rules of admission and rejection of evidence, for the disregard of which that same court would reverse the judgment of a justice of the peace, who errs not from inattention and inapplication but from lack of knowledge. The salutary rules of admissibility *306 and nonadmissibility of evidence are just as potent in a chancery court as in a law court.
The supported facts reduced to essentials then are:
1. The certificates were issued to Maurice E. Carroll, and with the knowledge and consent of Patrick J. Carroll were so carried on the books of the company, and all rights and privileges thereunder were exercised and enjoyed by Maurice E. Carroll during his life.
2. The above situation was advertised to the world, including the plaintiffs in error, by Patrick J. Carroll.
3. The purchase price, $2,000, for said stock was paid to the company by Patrick J. Carroll.
4. Maurice E. Carroll never reimbursed Patrick J. Carroll therefor.
5. The certificate for the 30 shares of stock issued to Maurice E. Carroll was found, indorsed in blank, in the safety deposit box of Patrick J. Carroll at the time of Patrick’s death, the indorsement bearing date about three years prior thereto.
6. The certificate indorsed in blank was by mistake thereafter delivered to Maurice E. Carroll, whose administrator sold it for value to the plaintiffs in error who were purchasers in good faith without notice of any claim thereto of the estate of Patrick J. Carroll or of anyone else.
The uniform transfer act provides:
“Sec. 8673-1. § 1. Title to a certificate and to the shares represented thereby can be transferred only,
*307 "(a) By delivery of the certificate indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby * * *.
"Sec. 8673-5. § 5. The delivery of a certificate to transfer title in accordance with the provisions of section 1 [G. C. § 8673-1], is effectual, except as provided in section 7 [G. C. §8673-7], though made by one having no right of possession and having no authority from the owner of the certificate or from the person purporting to transfer the title.
"Sec. 8673-6. § 6. The indorsement of a certificate by the person appearing by the certificate to be the owner of the shares represented thereby is effectual, except as provided in section 7 [G. C. § 8673-7], though the indorser or transferrer,
"(a) Was induced by fraud, duress or mistake, to make the indorsement or delivery, or
"(b) Has revoked the delivery of the certificate, or the authority given by the indorsement or delivery of the certificate, or
“(c) Has died or become legally incapacitated after the indorsement whether before or after the delivery of the certificate, or
“(d) Has received no consideration.
"Sec. 8673-7. § 7. If the indorsement or delivery of a certificate,
"(a) Was procured by fraud or duress, or
"(b) Was made under such mistake as to make the indorsement or delivery inequitable; or .
"If the delivery of a certificate was made. [,]
“(c) Without authority from the owner, or
*308 “(d) After the owner’s death of legal incapacity, the possession of the certificate may be reclaimed and the transfer thereof rescinded, unless:
“(1) The certificate has been transferred to a purchaser for value in good faith without notice of any facts'making the transfer wrongful, or
“(2) The injured person has elected to waive the injury, or has been guilty of laches in endeavoring to enforce his rights.
“Any court of appropriate jurisdiction may enforce specifically such right to reclaim the possession of the certificate or to rescind the transfer thereof and, pending litigation, may enjoin the further transfer of the certificate or impound it.”
Applying the statute to the instant case, Maurice E. Carroll appeared by the certificate to be the owner of the shares represented thereby. He indorsed it in blank (Section 8673-1, General Code).
The possession and the right of possession were in the administratrix of the estate of Patrick J. Carroll, deceased, who, through her agent, delivered it to Maurice E. Carroll by mistake (Section 8673-5, General Code).
Maurice E. Carroll, having possession, but not the right of possession, died, and his administrator delivered the certificate to the plaintiffs in error (Section 8673-6, General Code).
The plaintiffs in error were purchasers for value in good faith without notice of any facts making the transfer wrongful (Section 8673-7, General Code).
It is, however, strenuously contended by the defendant in error Phoebe S. Carroll, as administra *309 trix of the estate of Patrick J. Carroll, deceased, that the transfer of this stock is without the validifying effect of the provisions of the uniform transfer act, for the reasons (1) that Section 8673-2 expressly excludes, it, and (2) that the plaintiffs in error, being-advised that Maurice E. Carroll was dead at the time of the delivery of the certificate, did not come within the saving provision of (d) (1) of Section 8673-7, General Code.
Section 8673-2 reads as follows:
“Nothing in this act shall be construed as enlarging the powers of an infant or other persons lacking full legal capacity, or of a trustee, executor or administrator, or other fiduciary, to make a valid indorsement, assignment or power of attorney.”
It deals exclusively with the power of an executor, etc., to make a valid indorsement, assignment or power of attorney. Both the word “indorsement” and the word “assignment” as used in this statute contemplate a writing passing or attempting to pass title or an interest therein, and since the administrator attempted no such indorsement or assignment of title the section is without application to this case.
The fact that the plaintiffs in error had knowledge of the death of Maurice E. Carroll, and were thereby put upon notice, would only be such notice as would require them to inquire as to the right to sell as between the administrator and the legatees of the estate, and is met by their investigation of the proceedings in the probate court wherein the stock was appraised and returned as property of the estate, wherein an application for an order to *310 sell at private sale was made, and wherein an order was issued directing the administrator to sell at private sale this specific property at the appraisement, and a sale made to them according to the terms of the order.
The fact that the sale was never confirmed is of interest to the purchasers, the legatees, and the administrator, but not to a stranger to that proceeding and to that estate.
It must, therefore, follow that plaintiffs in error, A. G. Stoltz, W. H. Picking, and Charles Gallinger, by virtue of the statutes hereinbefore referred to, took good and indefeasible title to said stock.
This leaves the equities in the fund to be determined between the estates of Patrick J. Carroll and Maurice E. Carroll, and since the court below based upon evidence found that Patrick J. Carroll had paid the purchase price -for said stock, to-wit, $2,000, for Maurice E. Carroll, and that Maurice E. Carroll had never reimbursed him therefor, and since that court found from the evidence that the certificate was in Patrick J. Carroll’s possession, indorsed in blank, and also found that Patrick J. Carroll for approximately three years immediately prior to his death had permitted Maurice E. Carroll to exercise and enjoy all the privileges and benefits of an owner, and since the record is silent as to a delivery of said certificate by Maurice E. Carroll to Patrick J. Carroll, the logical conclusion would be, not that Patrick J. Carroll was the absolute owner — else Patrick J. Carroll would have had said stock transferred to himself upon the books of the company and would have exercised and *311 enjoyed the privileges of ownership, including the receiving of dividends and the voting of said stock — but that he had only, a special ownership therein and that that ownership did not extend to such ownership as would allow him to exercise and enjoy the privileges and benefits of ownership.
And, having, recourse again to the finding of facts, since there is no evidence of any agreement between Patrick J. and Maurice E. Carroll, the only obligation which existed between them was the implied obligation of Maurice E. Carroll to reimburse Patrick J. Carroll for the $2,000 advanced by him to the company in payment of Maurice E. Carroll’s subscription for said stock: and since such reimbursement was never made the reasonable conclusion must be that these certificates were held by Patrick J. Carroll as a pledge for the payment of said sum; at any rate equity will be done by requiring such payment out of the fund.
The judgment of the court below will, therefore, be reversed, and A. J. Richards, as administrator de bonis non with the will annexed of the estate of Maurice E. Carroll, deceased, will be ordered to pay out of the $9,000 in his hands from the sale of said 30 shares of stock, the sum of $2,000 with interest from the 17th day of March, 1913, to Phoebe S. Carroll, as administratrix of the estate of Patrick J. Carroll, deceased.

Judgments reversed and judgments for plaintiffs in error.

Nichols. C. J., Jones, Matthias, Johnson, Donahue and Wanamaker, JJ., concur.